UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                          )
**UNITED STATES OF AMERICA** *et al. ex*    )
*rel.* **ANDREW HAGERTY,**                          )
                                                          )
                        **Plaintiffs,**                      )
                                                          )      **Civil Action No.**
                        **v.**                                  )      **13-10214-FDS**
                                                          )
**CYBERONICS, INC.,**                                )
                                                          )
                        **Defendant.**                      )
_____)

**MEMORANDUM AND ORDER ON**
**<u>MOTION TO AMEND COMPLAINT AND MOTION TO COMPEL ARBITRATION</u>**

**SAYLOR, J.**

This is a *qui tam* action alleging the unlawful promotion of medically unnecessary

replacements of devices in epilepsy patients.  Relator Andrew Hagerty has brought suit against

defendant Cyberonics, Inc., a company that manufactures and sells the Vagus Nerve Stimulator

Therapy ("VNS") system, a medical device used to treat refractory epilepsy and treatment-

resistant depression.

The case was originally filed under seal on February 4, 2013.  On October 29, 2013, the

United States declined to intervene.  The case was unsealed on December 5, 2013.  On April 28,

2014, Cyberonics filed a motion to dismiss.  Hagerty filed an amended complaint on May 19,

2014.  On June 18, 2014, Cyberonics filed a second motion to dismiss for lack of subject-matter

jurisdiction and failure to state a claim.  On March 31, 2015, the Court granted that motion in

part and denied it in part.  It was granted as to the federal FCA claims (Counts 1 and 2), the state

FCA claims (Counts 3 through 30), and the claim for breach of contract and breach of the

implied covenant of good faith and fair dealing (Count 32), and denied as to the two remaining counts. As a result, all that remains of the first amended complaint are claims for retaliatory discharge in violation of 31 U.S.C. § 3730(h) (Count 31) and for wrongful termination and retaliation in violation of public policy and the Massachusetts False Claims Act, Mass. Gen. Laws ch. 12 § 5J (Count 33).

On May 13, 2015, Cyberonics filed a motion to compel arbitration and to dismiss the remaining two counts. On August 14, 2015, Hagerty moved for leave to file a second amended complaint.

For the following reasons, that motion will be denied, and defendant's motion to compel arbitration will be granted. The case will be stayed pending the result of the arbitration process.

## I.   **Background**

On April 19, 2010, Andrew Hagerty applied for employment at Cyberonics, Inc., by submitting and signing an employment application (the "Employment Application"). (Magee Decl. Ex. 1). In the Employment Application, he represented that he had "read th[e] agreement" and that he "accept[ed] all the terms described" therein. (*Id.* at 22). The application terms included a dispute resolution clause that read as follows:

> [I]n consideration for my submission and Cyberonics' consideration of this application, Cyberonics and I agree to resolve any claims or disputes arising out of or relating to my application for employment or, if hired, my employment with or termination from Cyberonics exclusively by final and binding arbitration before a neutral arbitrator under the then current rules of the American Arbitration Association.

(*Id.* at 14).

In an April 20, 2010 letter (the "Offer Letter"), Cyberonics offered Hagerty "employment . . . in the position of Associate Therapeutic Consultant [for the] Boston territory . . . ." (Magee Decl. Ex. 2). On the same day, Hagerty signed the Offer Letter. (*Id.* at

3).  The Offer Letter stated that "[i]n the event of a dispute concerning the employment offer or your employment relationship with Cyberonics, you and Cyberonics agree to submit the matter to binding arbitration under the then current rules of the American Arbitration Association."  (*Id.* at 2).  The Offer Letter stated that although the "letter is not intended to alter th[e] employment at will relationship in any way[,] [i]t does . . . supersede any other written and/or verbal representations made by any representative of Cyberonics relative to your employment with the Company."  (*Id.*).

On August 8, 2012, Hagerty filed a complaint against Cyberonics, alleging wrongful termination ("*Hagerty I*").  Complaint, *Hagerty v. Cyberonics, Inc.*, No. 1:12-cv-11465 (D. Mass. Aug. 8, 2012).  Cyberonics contends that on January 31, 2013, it notified Hagerty's attorney that it believed that the claims asserted in *Hagerty I* were subject to binding arbitration. The complaint made no reference to government health-care programs or the FCA, although it did contain allegations of fraud by Cyberonics against various physicians and patients.  *Id.*  It alleged one claim for breach of contract.  *Id.*

On February 2, 2013, Hagerty voluntarily dismissed *Hagerty I*.  On February 4, 2013, he filed the complaint in this case under seal.  The complaint alleged, among other things, violations of the False Claims Act.  The FCA claims were pursued by Hagerty on behalf of the United States as a *qui tam* action.

On October 29, 2013, the government filed a notice declining to intervene in this case. (Docket No. 12).  On December 5, 2013, the case was unsealed.

On April 28, 2014, Cyberonics moved to dismiss for failure to state a claim.  On May 19, 2014, Hagerty filed an amended complaint.  It alleged violations of the False Claims Act, 31 U.S.C. § 3729(a) (Count 1); conspiracy to violate the FCA (Count 2); violations of various state

analogues to the FCA (Counts 3 through 30); retaliatory discharge in violation of 31 U.S.C.

§ 3730(h) (Count 31); breach of contract and breach of the implied covenant of good faith and

fair dealing (Count 32); and wrongful termination and retaliation in violation of public policy

and the Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, § 5J (Count 33).

On June 18, 2014, Cyberonics moved to dismiss the amended complaint for lack of

subject-matter jurisdiction and failure to state a claim.  That motion was granted in part and

denied in part on March 31, 2015.  It was granted as to the federal FCA claims (Counts 1 and 2),

the state FCA claims (Counts 3 through 30), and the claim for breach of contract and breach of

the implied covenant of good faith and fair dealing (Count 32), and denied as to the two

remaining counts, the claims for retaliatory discharge in violation of 31 U.S.C. § 3730(h) (Count

31) and for wrongful termination and retaliation in violation of public policy and the

Massachusetts False Claims Act, Mass. Gen. Laws ch. 12 § 5J (Count 33).

On May 13, 2015, Cyberonics filed a motion to compel arbitration and to dismiss the

remaining two counts.  At the hearing on the motion to compel arbitration, on July 22, 2015,

Hagerty notified the Court of his intent to file a second amended complaint.  On August 14,

2015, he moved to file a second amended complaint.

## II.      **Hagerty's Motion to Amend the Complaint**

### A.      **Legal Standard**

Rule 15 of the Federal Rules of Civil Procedure addresses amendments to pleadings.

Under Rule 15(a), a party may amend a "pleading" without leave of court in certain relatively

narrow circumstances.[1]  "In all other cases, a party may amend its pleadings only with the

---

[1] A party may amend a pleading once as a matter of course within "21 days after serving it," or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).

opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Nonetheless, amendments may be denied on the basis of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  In determining whether to grant a motion to amend, the Court must examine the totality of the circumstances and "exercise its informed discretion in constructing a balance of pertinent considerations." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006).

**B.**    **Analysis**

Cyberonics contends that the motion to amend should be denied on the basis of futility and undue delay.

**1.**    **Futility**

The Court ruled in March 2015 that 30 of the 33 counts in Hagerty's first amended complaint did not meet the heightened pleading standard applied to FCA claims and its state-law analogues.  Hagerty's proposed second amended complaint seeks to add additional allegations to cure the deficiencies in the first amended complaint outlined by the Court.

The second amended complaint, like the first, lacks allegations of a single specific false claim made to the government.  It is also questionable whether it sufficiently alleges that any specific medical procedure, or any specific purchase of a battery or VNS system, was actually unnecessary.  In any event, the Court need not reach the issue of futility because the motion will be denied on the independent basis of undue delay.

**2.**    **Undue Delay**

In the First Circuit, it is well-established that "undue delay in moving to amend, even

standing alone, may be . . . an adequate reason [to deny a motion for leave to amend]." *In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014) (citing *Foman*, 371 U.S. at 182; *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 51-52 (1st Cir. 1998)); *accord Perez v. Hospital Damas, Inc.*, 769 F.3d 800, 802 (1st Cir. 2014); *Calderón-Serra v. Wilmington Trust Co.*, 715 F.3d 14, 20 (1st Cir. 2013) ("Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend.").  "When 'considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has [at the very least] the burden of showing some valid reason for his neglect and delay.'" *In re Lombardo*, 755 F.3d at 3 (internal quotation marks omitted) (quoting *Stephanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 933 (1st Cir. 1983)).  The First Circuit has "previously labeled as 'considerable time' warranting explanation, periods of fourteen months, fifteen months, and seventeen months." *Id.* (citations omitted) (citing *Grant v. News Grp. Bos., Inc.*, 55 F.3d 1, 6 (1st Cir. 1995) (fourteen months), *Acosta-Mestre*, 156 F.3d at 52 (fifteen months); *Stepanischen*, 722 F.2d at 933 (sixteen months)).  The First Circuit has "also held that in assessing whether delay is undue, a court will take account of what the movant 'knew or should have known and what he did or should have done.'" *Id.* at 3-4 (quoting *Invest Almza v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 72 (1st Cir. 2001)).  Delays for periods as short as eleven months, four months, and less than three month have been found to constitute undue delay.  *See Calderón-Serra*, 715 F.3d at 19-20 (eleven-month delay); *Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011) (four-month delay); *Kay v. N.H. Dem. Party*, 821 F.2d 31, 34 (1st Cir. 1987) (less than three-month delay).

A "considerable" amount of time certainly passed here.  Hagerty filed his initial complaint on August 8, 2012.  He filed the present action on February 4, 2013.  After Cyberonics

filed a motion to dismiss, Hagerty amended the complaint on May 19, 2014.  Cyberonics moved

to dismiss the first amended complaint (actually, his third try at a complaint) on June 18, 2014.

The Court ruled on that motion on March 31, 2015.  Hagerty did not move for leave to file a

second amended complaint until August 14, 2015.  That motion was filed (1) more than three

years after Hagerty filed the initial lawsuit; (2) more than two and a half years after he filed the

initial complaint in this case; (3) more than fourteen months after he filed the first amended

complaint; (4) more than thirteen months after Cyberonics moved to dismiss the first amended

complaint; and (5) more than four months after the Court's memorandum and order on the

motion to dismiss.  Hagerty therefore bears the burden of "showing some valid reason for his

neglect and delay."  *See In re Lombardo*, 755 F.3d at 3.

Hagerty contends that he "promptly sought amendment following this Court's

articulation of the pleading standard it is applying [in] this case."  (Pl.'s Mem. 11).  He contends

that any delay "is merely a reflection of a careful investigation and drafting process rather than of

any undue delay."  (*Id.*).  But Hagerty provides no satisfactory explanation as to why he did not

plead the new information at an earlier stage of litigation.  Rather than including the additional

information in the original complaint or the first amended complaint, Hagerty permitted the

parties to file extensive briefing on the motion to dismiss, and allowed the Court to undertake the

work of reaching a decision on that motion.  Having lost that motion, Hagerty now seeks yet

another chance, more than four months later.

The practice of waiting to amend a complaint until after the Court has ruled on a motion

to dismiss is troublesome, to say the least.  As the First Circuit noted in *ACA Financial Guaranty

Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008):

> The plaintiffs argue that in the end, they were entitled to wait and see if their
> amended complaint was rejected by the district court before being put to the costs

of filing a second amended complaint.  They claim this would promote efficiency in the judicial system.  Plaintiffs have it exactly backwards—their methodology would lead to delays, inefficiencies, and wasted work.  The plaintiffs do not get leisurely repeated bites at the apple, forcing a district judge to decide whether each successive complaint was adequate . . . .  Plaintiffs may not, having the needed information, deliberately wait in the wings for a year and a half with another amendment to a complaint should the court hold the first amended complaint was insufficient.  Such an approach would impose unnecessary costs and inefficiencies on both the courts and party opponents.  This court expressly disapproved a similar tactic in *James* [*v. Watt*, 716 F.2d 71 (1st Cir.1983)], and we do so again.  *See id.* at 78 ("Such a practice would dramatically undermine the ordinary rules governing the finality of judicial decisions, and should not be sanctioned in the absence of compelling circumstances." (citing 6 Wright & Miller, *Federal Practice and Procedure* § 1489 (1971))).

Here, Hagerty was "put on notice of the deficiencies in the complaint by the motion to dismiss.  If [he] had something relevant to add, [he] should have moved to add it then."  *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015).  Hagerty has been on notice of the deficiencies in the complaint since at least June 2014.  He presumably had the additional information at his disposal, or could have obtained it with reasonable diligence, at all relevant times.[1]  Under the circumstances, Hagerty has not provided a valid reason for his neglect and delay.

Hagerty contends that undue delay is not an independent basis to deny a motion to amend in the absence of prejudice, citing *Klunder v. Brown University*, 778 F.3d 24, 34 (1st Cir. 2015).  Although the *Klunder* court states that "[i]n reviewing a district court's decision on whether or not to grant an amendment, [it] routinely focus[es] [its] analysis on the prejudice to the non-moving party," it appears to consider prejudice as a separate basis for denying a motion to amend.  *Id.* at 34-35.  That approach would be consistent with the Supreme Court's decision in *Foman*.  *See* 371 U.S. at 182 (noting that "undue prejudice to the opposing party" is one of many

---

[1]  Nor is it a credible excuse that he did not anticipate the legal standard applied by the Court; it applied the well-established pleading standard articulated by the First Circuit in 2009 in *United States ex rel. Duxbury v. Ortho Biotech Products, L.P.*, 579 F.3d 13 (1st Cir. 2009).

separate reasons that a court can deny amendment).  Contrary to Hagerty's contention, the court does not "ma[k]e clear that absent a showing of prejudice undue delay alone was an insufficient basis for denying leave to amend."  (*See* Pl.'s Reply 16).   The *Klunder* court cites the 1979 First Circuit opinion *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15, 19 (1st Cir. 1979).   In a parenthetical for *Hayes*, the *Klunder* court includes a quote from *Hayes* that states, "[C]ourts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party . . . ."  *Klunder*, 778 F.3d at 34.   However, subsequent First Circuit decisions explicitly make clear that "undue delay in moving to amend, even standing alone, may be . . . an adequate reason [to deny a motion for leave to amend]."  *In re Lombardo*, 755 F.3d at 3 (citing *Foman*, 371 U.S. at 182; *Acosta-Mestre*, 156 F.3d at 51-52); *accord Perez*, 769 F.3d at 802; *Calderón-Serra*, 715 F.3d at 20 ("Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend.").   Therefore, a separate showing of prejudice is not necessary for the Court to deny a motion to amend on the basis of undue delay, which is inherently prejudicial to the opposing party.  *See Fire & Police Pension*, 778 F.3d at 247.   In any event, the harm here to Cyberonics from the lengthy delays and repeated efforts to amend the complaint are sufficient to establish the requisite degree of prejudice.

Under the circumstances, Hagerty's motion for leave to file a second amended complaint will be denied because of undue delay.

## III.   Cyberonics' Motion Compel Arbitration and Dismiss the Remaining Two Counts

### A.   Legal Standard

The Federal Arbitration Act, 9 U.S.C. §§ 1-301, governs the enforcement of written arbitration agreements.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001)

(holding that the FAA extends to employment cases for employees other than those engaged in transportation).  It was enacted in order to reverse longstanding judicial hostility to arbitration agreements and to "place such agreements upon the same footing as other contracts."  *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 271 (1995) (internal quotation marks and citation omitted); *accord AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745-46 (2011). When "construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties."  *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (internal quotation marks and citation omitted).  The Act promotes "a liberal federal policy favoring arbitration agreements" and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

"A party who is seeking to compel arbitration must demonstrate that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011) (internal quotation marks and citation omitted).  "When an enforceable arbitration agreement exists between the parties, a court may enforce that agreement by staying existing litigation pending arbitration of the parties, 9 U.S.C. § 3, or compelling the parties to arbitrate, 9 U.S.C. § 4." *DeLuca v. Bear Stearns & Co.*, 175 F. Supp. 2d 102, 106-07 (D. Mass. 2001).

**B.**   **Analysis**

Cyberonics has moved to compel arbitration and dismiss Counts 31 and 33 pursuant to the Federal Arbitration Act.  It contends that a valid arbitration agreement exists between the

parties, that Counts 31 and 33 fall within the arbitration agreement's scope, and that it has not

waived its right to compel arbitration.

### 1.    <u>Agreement to Arbitrate</u>

To determine whether a valid agreement to arbitrate exists, federal courts generally

"apply ordinary state-law principles that govern the formation of contracts." *First Options of*

*Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Campbell v. General Dynamics Gov't*

*Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005) (explaining that "principles of state contract law

control the determination of whether a valid agreement to arbitrate exists").  Under

Massachusetts law, the formation of a contract requires a definite offer, acceptance, and

consideration.  *Vadnais v. NSK Steering Sys. Am., Inc.*, 675 F. Supp. 2d 205, 207 (D. Mass.

2009).  Formation of a contract is judged by the objective conduct of the parties, rather than their

subjective intent.  *Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc.*, 68 Mass.

App. Ct. 582, 596 n.35 (2007).  A contract may be binding on an employee in the context of an

at-will employment relationship even if the agreement is not express and in writing.  *See, e.g.*,

*Ellerbee v. Gamestop, Inc.*, 604 F. Supp. 2d 349, 354 (D. Mass. 2009) (citing *O'Brien v. New*

*England Tel. Co.*, 422 Mass. 686, 691 (1996)).  An employee's "continued employment [may]

constitute[ ] adequate consideration for the contract."  *Id.* (citing *O'Brien*, 442 Mass. at 691).

"Thus, the issue of whether the parties validly entered into an arbitration agreement

depends on whether [d]efendant gave 'some minimal level of notice to the employee that

statutory claims are subject to arbitration.'"  *Id.* (quoting *Campbell*, 407 F.3d at 554).  "This is an

objective test:  'the sufficiency of the notice turns on whether, under the totality of the

circumstances, the employer's communication would have provided a reasonably prudent

employee notice of the waiver [of the right to proceed in a judicial forum].'" *Id.* (quoting *Campbell*, 407 F.3d at 555).

In the present case, it is clear that there was an arbitration agreement.  Both the Employment Application and the Offer Letter contain arbitration clauses.  It is also clear from Hagerty's signature that he consented to the agreements and that he had actual notice of their terms.  His employment with Cyberonics from May 2010 to January 2012 was sufficient consideration to make the arbitration agreements enforceable.

## 2.   Scope of Arbitration Agreement

The question of "whether a particular dispute is within the class of those disputes governed by the arbitration clause . . . is a matter of federal law." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 524 (3d Cir. 2009).  "In determining whether the particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:]  an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)).  In other words, if the contract is ambiguous as to whether arbitration is mandatory, the federal policy favoring arbitration applies. *Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000); *Renfrew Ctrs., Inc. v. UNI/CARE Sys. Inc.*, 920 F. Supp. 2d 572, 575-77 (E.D. Pa. 2013).  However, "the fact that the parties have agreed to arbitrate some disputes does not necessarily manifest an intent to arbitrate every dispute that might arise between the parties . . . ." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014).  Thus, "whether a dispute falls within the scope of an arbitration clause depends upon the

relationship between (1) the breadth of the arbitration clause and (2) the nature of the given

claim." *Id.*

The use of phrases such as "arising under" or "arising out of" in an arbitration provision

generally indicates an intent to arbitrate a broad scope of claims. *Battaglia*, 233 F.3d at 727; *see*

*Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 330 (E.D. Pa. 2004); *see, e.g.*, *Century*

*Indem. Co.*, 584 F.3d at 556 (broadly construing a provision requiring arbitration of "any

dispute with reference to the interpretation of this Agreement or [the parties'] rights with respect

to any transaction involved"); *Medtronic AVE Inc. v. Cordis Corp.*, 100 Fed. Appx. 865, 868-69

(3rd Cir. 2004) (compelling arbitration of "broad" clause that governed "any dispute, claim, or

controversy arising from or relating to this Agreement or alleged breaches thereof"); *Peltz*, 367

F. Supp. 2d at 717-18 (broadly construing an agreement that "[a]ny and all claims . . . of any

nature whatsoever (whether in contract, tort, or otherwise, including statutory . . . claims) arising

out of, relating to, or in connection with (1) this Agreement, [or] (2) the relationships which

result from this Agreement . . .").  In contrast, an agreement to arbitrate only disputes "regarding

the performance or interpretation" of the contract is normally relatively narrow in scope.

*CardioNet, Inc.*, 751 F.3d at 173-74.

The two remaining claims in this case are for alleged retaliation in violation of the federal

and Massachusetts FCAs.  In the Employment Application, the parties agreed "to resolve any

claims or disputes *arising out of or relating to* [Hagerty's] application for employment or, if

hired, [his] employment with or termination from Cyberonics exclusively by final and binding

arbitration before a neutral arbitrator under the then current rules of the American Arbitration

Association."  (Magee Decl. Ex. 1) (emphasis added).  In the Offer Letter, the parties agreed that

in "the event of a dispute *concerning* this employment offer or [Hagerty's] employment

relationship with Cyberonics, [Hagerty] and Cyberonics agree to submit the matter to binding arbitration under the then current rules of the American Arbitration Association."  (Magee Decl. Ex. 2) (emphasis added).

The "arising out of or relating to" and "concerning" provisions indicate an intent to arbitrate a broad scope of claims.  *Battaglia*, 233 F.3d at 727; *see Miron*, 342 F. Supp. 2d at 330. The arbitration clauses state that they specifically apply to "employment," "termination," and "employment relationship."  The FCA retaliation claims at issue here "are related to [Hagerty's] employment[], and particularly [his] termination[]."  *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 381 (4th Cir. 2008).  Other courts to examine FCA claims and arbitration clauses similar to those here have determined that the retaliation claims are related to employment or termination, and therefore are within the arbitration provision's scope. *See, e.g.*, *United States ex rel. Wilson*, 525 F.3d at 381 (finding that relators' federal FCA retaliation claims "clearly fall within the ambit of [an] arbitration clause" that stated that claims "related to . . . employment, including . . . termination, . . . must be submitted to binding arbitration instead of to the court system"); *United States ex rel. Cassidy v. KBR, Inc.*, 590 F. Supp. 2d 850, 854, 862-63 (S.D. Tex. 2008) (finding that relators' FCA retaliation claims were arbitrable when the arbitration clause stated that claims "related to . . . employment, including . . . termination . . . must be submitted to binding arbitration instead of to the court system"); *Mikes v. Strauss*, 889 F. Supp. 746, 755-57 (S.D.N.Y. 1995) (interpreting clause to arbitrate all "disagreements, claims, questions or controversies which may arise out of relate to [the] [a]greement" as covering plaintiff's FCA retaliation claim).  Therefore, in light of the "presumption of arbitrability" and the federal policy favoring arbitration, Hagerty's wrongful-

termination claims are subject to arbitration, no matter whether the relevant agreement is the Employment Application, the Offer Letter, or both.

Hagerty contends that the anti-retaliation claims do not fall within the scope of the arbitration clause because the clause does not contain "clear and unmistakable terms" evidencing an enforceable agreement to arbitrate the relevant statutory claims.  He cites *Warfield v. Beth Israel Deaconess Medical Center, Inc.*, 454 Mass. 390 (2009) in support of that contention.  In *Warfield*, there was no dispute that there was a valid agreement that contained an arbitration clause.  *Id.* at 396.  ("The arbitration clause in the agreement provides that '[a]ny claim, controversy or dispute arising out of or in connection with this Agreement or its negotiations shall be settled by arbitration.'").  The issue before the SJC was whether certain statutory claims fell within the scope of an arbitration clause.  *Id.*  The SJC held that "Warfield's statutory discrimination claims do not fall within the scope of the arbitration clause contained in the employment agreement."  *Id.* at 391.  It found that "[c]onsistent with the public policy against workplace discrimination reflected in [Mass. Gen. Laws ch. 151B], . . . an employment contract containing an agreement by the employee to limit or waive any of the rights or remedies conferred by Mass. Gen. Laws ch. 151B is enforceable only if such an agreement is stated in clear and unmistakable terms."  *Id.* at 398.

However, the court in *Warfield* incorrectly "appl[ied] general principles of State contract law to determine whether a particular agreement requires arbitration of a claim."  *Id.* at 396.[2]  As previously stated, the question of "whether a particular dispute is within the class of those disputes governed by the arbitration clause . . . is a matter of federal law."  *Century Indem.*, 584

---

[2] Hagerty appears to argue that the "clear and unmistakable" standard adopted in *Warfield* goes to validity, and not to scope.  However, the clear language in *Warfield* contradicts that contention.

F.3d at 524.  In determining whether the particular dispute falls within a valid arbitration

agreement's scope, "'there is a presumption of arbitrability[:]  an order to arbitrate the particular

grievance should not be denied unless it may be said with positive assurance that the arbitration

clause is not susceptible of an interpretation that covers the asserted dispute.'"  *Id.* (quoting

*AT&T Techs.*, 475 U.S. at 650).  Applying the *Warfield* "clear and unmistakable terms" test

would not "place [the arbitration agreement] upon the same footing as other contracts," *id.* at

532, and would run afoul of the presumption of arbitrability whereby "any doubts concerning the

scope of an arbitrable issue should be resolved in favor of arbitration."  *Id.* at 527.  Therefore, the

*Warfield* "clear and unmistakable terms" test does not apply here.[3]

However, and in any event, *Warfield* is readily distinguishable because the arbitration

provision at issue in that case was much narrower than the ones in the present case.  In *Warfield*,

the parties agreed to arbitrate only claims or disputes "arising out of or in connection with the

Agreement or its negotiations."  454 Mass. at 392.  As previously stated, in the Employment

Application, the parties agreed to arbitrate claims "arising out of or relating to [Hagerty's]

application for employment, or if hired, [his] employment with or termination from Cyberonics."

In the Offer Letter, the parties agreed to arbitrate all disputes "concerning this employment offer

or [Hagerty's] employment relationship with Cyberonics."  Therefore, the arbitration provisions

here are broader than the one in *Warfield*.

Hagerty also contends that the arbitration clause in the Offer Letter supersedes the clause

in the Employment Application, and the clause in the Offer Letter reflects an intent to have

---

[3] There is language in a recent SJC case that suggests that *Warfield* may not be good law.  In *Machado v. System4 LLC*, 471 Mass. 204, 218 n.19 (2015), the SJC wrote that "[e]ven if Massachusetts law did require an arbitration clause to specifically mention applicability to claims under the Wage Act, such a principle might be preempted by the [Federal Arbitration Act], as it could be interpreted to prohibit or disproportionately disfavor arbitration." (citations and quotations omitted).

matters relating to the terms of the employment arbitrated (not disputes involving retaliation, termination or discrimination claims).  He contends that the dispute here is not about the "employment offer" or the "employment relationship" because it is about the lack of a relationship due to his termination.

As a preliminary matter, the Offer Letter states that it only supersedes "other written and/or verbal *representations made by any representative of Cyberonics* . . . ."  Therefore, because the Employment Application's arbitration clause is a mutual and reciprocal agreement between the parties, rather than a unilateral "representation made" by Cyberonics, the Employment Application is not superseded by the Offer Letter.

However, and in any event, Hagerty's contention is unpersuasive.  Without an employment relationship, there can be no termination.  Therefore, it would make no sense for the parties to agree to arbitration for matters arising out of their employment relationship, but to exclude matters relating to the termination of that relationship.

Accordingly, Counts 31 and 33 fall within the scope of the arbitration agreements.

### 3.    Waiver

"In considering whether a party has waived its arbitration right, courts are consistently mindful of the strong federal policy favoring arbitration."  *Creative Sols. Grp., Inc. v. Pentzer Corp.*, 252 F.3d 28, 32 (1st Cir. 2001).  "Waiver is not to be lightly inferred, and mere delay in seeking [arbitration] without some resultant prejudice to a party cannot carry the day."  *Id.* (quoting *Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 806 F.2d 291, 293 (1st Cir. 1986)).  To determine whether there was prejudice, courts look to a number of factors, including: (1) the length of delay in seeking a stay; (2) the extent to which the party participated in litigation; (3) whether it took a position inconsistent with its arbitration right; (4) how much

17

activity in the litigation has occurred; and (5) whether discovery or other important intervening events have occurred. *Id.* at 32-33.

Hagerty contends that Cyberonics has waived its right to arbitration by filing two motions to dismiss all of the claims before invoking its right to arbitration after the Court ruled the latter motion. The problem with Hagerty's contention is that most of the claims in the present lawsuit were not arbitrable.  It is understandable that Cyberonics did not wish to bifurcate litigation. Cyberonics attempted to resolve all the claims with the motions to dismiss.[4]  "[I]t is well-established that a party does not waive its right to arbitrate merely by filing a motion to dismiss." *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726-27 (7th Cir. 2004) (citing *Creative Sols. Grp.*, 252 F.3d at 33).

The two Eighth Circuit decisions that Hagerty cites in opposition to the motion to dismiss are readily distinguishable from the present case.  In both of those cases, motions to dismiss were filed even though every claim was within the scope of a valid arbitration agreement.  *See Hooper v. Advance Am. Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 921 (8th Cir. 2009) (finding defendant's actions inconsistent with arbitration where it "wanted to see how the case was going to federal district court before deciding whether it would be better off there or in arbitration"); *Lewallen v. Green Tree Servicing, LLC*, 487 F.3d 1085, 1090 (8th Cir. 2007) (finding that multiple actions including filing bankruptcy proof of claim, serving discovery requests, and moving to dismiss all claims on the merits were inconsistent with right to arbitrate).  Here, it is undisputed that thirty of the thirty-three claims in this case were not subject to arbitration.  Under the circumstances, moving to dismiss was neither unreasonable nor inconsistent with

---

[4] In response to the first motion to dismiss, Hagerty amended the complaint.  Cyberonics then filed a second motion to dismiss.  Therefore, the fact that Cyberonics filed two motions to dismiss (as opposed to one) is irrelevant.

Cyberonics' right to arbitrate. *See Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463 (2d Cir. 1985) (finding that party did not waive arbitration by moving to dismiss twenty-eight-count complaint containing mostly non-arbitrable claims); *see also Hooper*, 589 F.3d at 922 ("Not every motion to dismiss is inconsistent with the right to arbitration.").

On March 31, 2015, all the claims with the exception of the two retaliation claims were dismissed. After receiving an extension of time to file an answer, Cyberonics answered the complaint on April 28, 2015. In its answer, Cyberonics made clear that it believed the remaining claims are "subject to binding arbitration." On May 13, 2015, it filed the motion to compel arbitration. Under the circumstances, the delay was not unreasonable, Cyberonics did not take a position that was inconsistent with its arbitration right, and Hagerty suffered little, if any, prejudice from the brief delay. Accordingly, Cyberonics did not waive its right to arbitrate.

### 4.     Proper Disposition of the Case

Having determined that the arbitration provisions are enforceable, the Court must now determine the proper disposition of the case. Defendant contends that after granting its motion to compel arbitration, rather than granting a stay, the Court should dismiss the remaining two counts with prejudice. Relator contends that the Court should stay the proceedings pending arbitration.

"Where one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the lawsuit, if *all* claims asserted in the case are found arbitrable." *Next Step Med. Co., Inc. v. Johnson & Johnson, Int'l*, 619 F.3d 67, 71 (1st Cir. 2010) (emphasis in original). Because the two remaining claims for retaliation are both arbitrable, the Court could dismiss the entire matter with prejudice. However, such a resolution

is unnecessary and less efficient because, among other things, a stay will consolidate the issues for appeal.  The Court will therefore stay the proceedings pending arbitration.

**IV.**     **<u>Conclusion</u>**

      For the foregoing reasons, the motion for leave to file a second amended complaint by relator Andrew Hagerty is DENIED.  Defendant's motion to compel arbitration for Count 31 and Count 33 is GRANTED, and the case is STAYED pending the result of the arbitration process.

**So Ordered.**

                               /s/ F. Dennis Saylor IV
                               F. Dennis Saylor IV
Dated: November 13, 2015              United States District Judge